UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ x
MEYER MINTZ and MEIR SPEAR, :

                Plaintiffs, :   No. 05 CV 4904 (LTS)

      -against- :

RONALD BARON, MORTY SCHAJA, :
LINDA S. MARTINSON, STEVEN B.
DODGE, NORMAN S. EDELCUP, DA- :
VID I. FUENTE, CHARLES N.
MATHEWSON, HAROLD W. MILNER, :
RAYMOND NOVECK, DAVID A.
SILVERMAN, BAMCO, INC., BARON :
CAPITAL, INC., BARON GROWTH
FUND and BARON SMALL CAP FUND, :

                Defendants. :
------------------------------ x

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

| | |
|---|---|
| SKADDEN, ARPS, SLATE,<br>  MEAGHER & FLOM, LLP<br>Seth M. Schwartz (SS 2530)<br>Beverly A. Farrell (BF 2244)<br>Four Times Square<br>New York, New York 10036<br>(212) 735-3000 | SCHULTE ROTH & ZABEL LLP<br>Brooks R. Burdette (BB 8380)<br>919 Third Avenue<br>New York, NY 10022<br>(212) 756-2000 |
| Attorneys for Defendants<br>Ronald Baron, Morty Schaja,<br>Linda S. Martinson, BAMCO Inc.,<br>Baron Capital, Inc., Baron Growth<br>Fund and Baron Small Cap Fund | Attorneys for Defendants<br>Steven B. Dodge, Norman S. Edelcup, David<br>I. Fuente, Charles N. Mathewson, Harold W.<br>Milner, Raymond Noveck and David A.<br>Silverman |

## TABLE OF CONTENTS

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    COUNT I OF THE COMPLAINT SHOULD BE DISMISSED . . . . . . . . . . . . . . . . . . . . 1

II.    COUNT II OF THE COMPLAINT SHOULD BE DISMISSED . . . . . . . . . . . . . . . . . . 4

        A.    The Claims Alleged in Count II Are Derivative in Nature . . . . . . . . . . . . . . . . . . 4

        B.    Plaintiffs Failed to Satisfy the Universal Demand Requirement . . . . . . . . . . . . . 7

                1.    Plaintiffs Did Not Make a Proper Demand . . . . . . . . . . . . . . . . . . . . . . . . 7

                2.    The Complaint Nowhere Alleges, As it Must, That the "Demand" Was
                     Wrongfully Refused . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Defendants respectfully submit this reply memorandum of law in further support of their motion for an order, pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure, dismissing the complaint for failure to state a claim for relief and failure to comply with the requirements of Rule 23.1.

## ARGUMENT

### I. COUNT I OF THE COMPLAINT SHOULD BE DISMISSED

As confirmed by plaintiffs' opposition brief, the fatal flaw with plaintiffs' section 36(b) claim is that it is based almost entirely on the conclusory and demonstrably erroneous premise that "the Funds have ceased marketing their shares to new investors." (Opp. Br. 6.)[1] As demonstrated in defendants' moving brief, this contention is undermined by the Funds' SEC filings. Those documents show that the Funds remain open to a large universe of potential new investors and that they continue to pay sales and service fees in connection with the ongoing sale of Fund shares and maintenance of shareholder accounts belonging to both new and existing Fund shareholders. (Moving Br. at 7-8.) Where, as here, "a plaintiff's allegations are contradicted by such [SEC filings], those allegations are insufficient to defeat a motion to dismiss." Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).

ING Principal Protection Funds Derivative Litigation, 369 F. Supp. 2d 163 (D. Mass. 2005), is on point. In that case, the shares of certain mutual funds were marketed in three different phases. In the "Offering Phase," fund shares were sold to the general public; in the "Guarantee Period," the funds were closed to new investors, but existing shareholders could purchase additional

---

[1] Capitalized terms not defined herein are defined as set forth in defendants' moving memorandum of law dated July 8, 2005 ("Moving Br.").

fund shares by reinvesting dividends; and in the "Index Plus Large Cap Period," new fund shares were offered on a continuing basis without restriction, but solely to existing investors. 369 F. Supp. 2d at 166. As for the 12b-1 fees paid by the funds, certain share classes were assessed an annual distribution fee of .75% of the funds' net asset value, and all share classes paid a service fee equal to .25% of net asset value. Id.

In claiming that the 12b-1 fees were excessive in violation of Section 36(b) of the ICA, 15 U.S.c. § 80a-35(b), plaintiffs alleged that defendants breached their fiduciary duties by "continuing to authorize and receive distribution and service fees during the Guarantee Period even though no additional shares were sold to new investors." ING, 369 F. Supp. 2d at 166-67. The court held that this allegation failed to state a claim because it did not address the reasonableness of the fees paid for sales-related services during the period fund shares were sold to new investors, nor did it address the reasonableness of the fees paid for shareholder services rendered in both the Offering Phase and the Guarantee Period.[2] The court therefore granted defendants' motion to dismiss, reasoning:

> Plaintiffs acknowledge that, during the Offering Phase, shares of the funds were offered and sold to the general public. SEC Rule 12b-1 permits fund-advisory firms to recover certain sales-related expenses previously paid out when distributing the funds' shares. Compensation for past distribution services are considered payments made "in connection with" the distribution of a fund's shares. Plaintiffs, therefore, <u>cannot entirely confine their claim</u> for excessive distribution fees to the *de minimis* sales-related services provided when the funds were closed to new investors. <u>At a minimum, Plaintiffs must also allege that the distribution fees are disproportionate and unrelated to the sales-related services actually provided when shares of the funds were marketed and sold to the general public.</u> Because the amended complaint

---

[2]   At the time of the lawsuit in ING, the funds were in the Guarantee Period and had not yet progressed to the Index Plus Large Cap Period. Id.

2

> does not contain this fundamental claim, or any facts that would support such an allegation, Plaintiffs fail to state a claim [under Section 36(b)].
>
> Plaintiffs also fail to state a claim with respect to the .25% service fees. In the amended complaint, Plaintiffs do not allege that the service fees exceed the ongoing expenses associated with maintaining shareholder accounts. <u>Plaintiffs allege no facts that, if true, would indicate that the service fees are unrelated to the shareholder services provided by broker-dealers</u>. Defendants' Motion to Dismiss is ALLOWED as to [the Section 36(b) claim].

369 F. Supp. 2d at 169 (footnotes omitted) (emphasis added).

In this case, it is undisputed that the Funds pay a .25% fee to cover the costs of <u>both</u> (a) the sales-related services rendered in connection with the sale of Fund shares to the new and existing shareholders who remain entitled to continue to purchase additional shares, <u>and</u> (b) the shareholder services provided by broker-dealers to all Fund shareholders as long as they continue to maintain investments in the Funds. The complaint, however, all but completely ignores these incontrovertible facts and makes no attempt to address the relationship between the ongoing sales and shareholder services provided to the Fund and its shareholders, and the 12b-1 fees paid to compensate those who render the services. Indeed, the complaint alleges no facts which, if true, would suggest, much less show, that the .25% fee is disproportionate and unrelated to the ongoing services for which the fee is paid. Consequently, here, as in <u>ING</u>, plaintiffs' section 36(b) claim is legally insufficient and should be dismissed.[3]

---

[3] Plaintiffs' reliance on <u>Zucker ex rel. AIM Small Cap Growth Fund/A v. Aim Advisors, Inc.</u> 371 F. Supp. 2d 845, 848-49 (S.D. Tex. 2005) and <u>Lieber ex rel. Invesco Balanced Fund/Inv v. Invesco Funds Group</u>, 371 F. Supp. 2d 852, 855-56 (S.D. Tex. 2005) (Opp. Br. at 8) is mystifying in that the court in both cases granted defendant's motion to dismiss plaintiffs' Section 36(b) claim.

3

II. **COUNT II OF THE COMPLAINT SHOULD BE DISMISSED**

   A.  **The Claims Alleged in Count II Are Derivative in Nature**

   In their opposition brief, plaintiffs contend that their state law claims are direct, not derivative, because defendants purportedly breached a duty "directly" owed to plaintiffs under SEC Rule 12b-1. This contention is legally erroneous for several reasons.

   First, a claim of breach of fiduciary duty under Massachusetts state law may not be premised on an alleged violation of Rule 12b-1. As explained by the Second Circuit Court of Appeals when rejecting a Rule 12b-1 claim in an analogous context:

> ... Under Rule 12b-1, the investment company directors are held to <u>the fiduciary standards of Section 36 [of the ICA]</u> when they consider whether to implement or continue a distribution plan, such as the 12b-1 plan at issue here.
>
> [Plaintiff] complains that the Fund's 12b-1 plan violates section 12(b) [of the ICA] and SEC Rule 12b-1 in that the amounts paid by the Fund are based on an entire asset base regardless of whether any additional shares are sold. <u>This claim, however, is a reincarnation of his "excessive fee" argument, and thus is indistinguishable from the section 36(b) claim, which encompassed the 12b-1 plan.</u> To allow this claim, which is cognizable under section 36(b), to be brought under section 12(b) would be to allow <u>circumvention of the following specific procedural limitations of section 36(b)</u>: damages may be recovered only against the recipient of the compensation, are limited to the amount of compensation, and may not be recovered for any period prior to one year before the commencement of the action. The district court did not err in finding that this <u>circumvention would be impermissible</u>.

<u>Krinsk v. Fund Asset Mgmt, Inc.</u>, 875 F.2d 404, 412-13 (2d Cir. 1989) (citations and footnote omitted) (emphasis added).

Here, as in Krinsk, the violation of Rule 12b-1 alleged in Count II of the Complaint is a "reincarnation" of, and indistinguishable from, the purported violation of Section 36(b) alleged in Count I. Permitting such a claim to proceed would not only impermissibly circumvent the procedural limitations of Section 36(b) of the ICA, it also would improperly allow plaintiff to bypass the substantive demand requirements of Massachusetts state law.

Furthermore, under the state law principles which govern plaintiffs' state law claims in this case, defendants owe no fiduciary duty "directly" to plaintiffs or the other shareholders of the Funds. As a matter of Massachusetts law, "'[a] director or officer of a corporation does not occupy a fiduciary relation to individual stockholders.'" Jernberg v. Mann, 358 F.3d 131, 135 (1st Cir. 2004) (citation omitted) (emphasis added). Consequently, under the law of Massachusetts, "claims for breach of a fiduciary duty [must] be brought derivatively." Mutchka v. Harris, 373 F. Supp. 2d 1021, 1025 (C.D. Cal. 2005) (applying Massachusetts law) (emphasis added).

Even without regard to the nature of the duty at issue, plaintiffs' state law claims must be brought derivatively because the complaint alleges injury directly to the Funds and only derivatively to Fund shareholders such as plaintiffs. See In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp. 2d 222, 234-35 (S.D.N.Y. 2005) (regardless of whether an alleged duty is owed directly or indirectly to shareholders, "no cases under Massachusetts law . . . reject the indirect injury test"). In an attempt to mask the derivative nature of these claims, plaintiffs contend that they have suffered "direct" injury because "the Funds do not hold any assets other than those owned by the shareholders, the funds' shareholders directly bear certain of the funds' expenses on a pro rata basis," and the Funds' SEC filings purportedly "acknowledge" that "the shareholders pay for the Funds' 12b-1

5

expenses." (Opp. Br. at 16-17.) These allegations are completely contradicted, however, by the SEC filings on which plaintiffs rely. Indeed, on their face, the Funds' prospectuses expressly state that:

> [t]he Funds have adopted a plan under rule 12b-1 that allows <u>the Funds to pay distribution fees</u> for the sale and distribution of their shares and for services provided to shareholders. Because <u>the fees are paid out of the Funds' assets</u> on an on-going basis, over time these fees will increase the cost of your investment . . . .

(Schwartz Decl. Ex. 3 at 19 (emphasis added); <u>see also id.</u> Ex. 4 at 24 (SAI; "the Distribution Plan authorizes the <u>Funds to pay</u> the Distributor a distribution or service fee" (emphasis added)).

As the Funds' SEC filings make clear, the Funds pay all 12b-1 fees to those who sell fund shares and service fund shareholders, while the shareholders <u>indirectly</u> bear their pro rata share of the 12b-1 fees paid by the Funds. Consequently, there is and can be no doubt that any injury from 12b-1 fees "allegedly caused [to] Fund shareholders (depletion of Fund assets) is indistinguishable from injury they caused the Funds themselves: the mere fact that Fund assets ultimately belong to the Fund shareholders does <u>not</u> render depletion of those assets injury suffered by shareholders that is distinct from injury suffered by the Funds." <u>In re Lord Abbett Mut. Funds Fee Litig.</u>, No. 04-CV-0559 (WJM), 2005 WL 2090517, at *9 (D.N.J. Aug. 30, 2005) (emphasis added); <u>accord e.g.</u> <u>In re Franklin Mut. Funds Excessive Fee Litig.</u>, No. 04-CV-98 (WJM), 2005 WL 2175950, at *9 (D.N.J. Sept. 9, 2005) ("Because the [allegedly] excessive fees and charges reduced the net asset value of the funds and, in turn, reduced the net asset per share value, the plaintiffs did not sustain an injury distinct from that suffered by the funds"); <u>Eaton Vance</u>, 380 F. Supp. 2d at 234 (shareholders "did

not pay the [12b-1] fees at issue directly, but were affected indirectly because the fees were paid out of Fund assets").[4]

## B. Plaintiffs Failed to Satisfy the Universal Demand Requirement

### 1. Plaintiffs Did Not Make a Proper Demand

In their opposition papers, plaintiffs point to a letter from their counsel dated January 19, 2005 (the "Letter") to contend that they satisfied the demand requirements of Massachusetts law. (Korsinsky Decl. Ex. A.) While the Letter does contain a "demand" of sorts, it is inadequate as a matter of law for purposes of making the requisite "demand on the corporation's board of directors to prosecute the litigation." Harhen v. Brown, 730 N.E.2d 859, 865 (Mass. 2000).

To constitute a proper demand, "a communication must specifically state: (i) the identity of the alleged wrongdoers, (ii) the wrongdoing they allegedly perpetrated and the resultant injury to the corporation, and (iii) the legal action the shareholder wants the board to take on the corporation's behalf." Gatz v. Ponsoldt, Civ. A. No. 174-N, 2004 Del. Ch. LEXIS 203, at *17 (Del. Ch. Nov. 5, 2004). Purported demands that are ambiguous are "'construed against a finding of a demand.'" Id. at *18 (citation omitted); accord Levner v. Saud, 903 F. Supp. 452, 456 (S.D.N.Y. 1994).

Here, among its numerous other flaws, the Letter failed to satisfy the fundamental requirement of specifically demanding that the Funds' directors commence a legal proceeding against specifically named individuals or entities. Rather, it merely demanded that the directors terminate

---

[4] Plaintiffs' heavy reliance on Strigliabotti v. Franklin Resources, Inc., No. C 04-00883 SI, 2005 WL 645529, at *8 (N.D. Cal. Mar. 7, 2005) (Opp. Br. 16, 21 n.12) is misplaced given that "its reasoning is at odds with the overwhelming majority of courts who have addressed this issue." Hogan v. Baker, No. Civ. A. 305CV0073P, 2005 WL 1949476, at *4 (N.D. Tex. Aug. 12, 2005).

7

the Funds' 12b-1 Plan and "settle" the "claims" threatened in the draft complaint accompanying the Letter. As for the draft complaint, it alleged only one claim: a section 36(b) claim against BAMCO, Baron Capital and Baron Growth Fund. Because the only plaintiffs with standing to bring a section 36(b) claim are the SEC and Fund shareholders, see 15 U.S.C. § 80a-35(b),[5] neither the Letter nor the complaint attached to it could reasonably be viewed as a demand on the Funds' directors to commence litigation against any purported wrongdoers. Consequently, as a matter of law, the Letter did not constitute an adequate demand on the Funds' directors. See e.g. Levner, 903 F. Supp. at 456 (purported demand held inadequate where, as here, it did not specify the remedial relief the directors were to seek against the alleged wrongdoer); Parfi Holding AB v. Mirror Image Internet, Inc., 794 A.2d 1211, 1237 (Del. Ch. 2001) (purported demand held inadequate where, as here, it made no demand that the board cause the corporation to file suit against the company or any director, and the communication indicated that plaintiff might bring a direct claim), rev'd on other grounds, 817 A.2d 149 (Del. 2002).

        2.      The Complaint Nowhere Alleges,
              As it Must, That the "Demand"
              Was Wrongfully Refused

Even if the Letter constituted a proper "demand," which it did not, plaintiffs' state law claims still would be legally defective. As a matter of settled Massachusetts law, "[s]hould a board of directors, the majority of whom are disinterested, refuse [a] demand to pursue litigation, a plaintiff may pursue the lawsuit only by showing that the demand was wrongfully refused." Harhen, 730 N.E.2d at 865. As explained by the court in Harhen:

---

[5]    Pursuant to the express provisions of section 36(b), the only persons granted a right of action under the statute are "the Commission, or . . a security holder of such registered investment company on behalf of such company." 15 U.S.C. § 80a-35(b).

> In a demand refused case, because it is presumed that a disinterested board of directors acts "in good faith towards all [the corporation's] members," and because directors "as a matter of business policy[] may refuse to bring a suit," a disinterested board of directors that has refused a plaintiff's pre-suit demand is entitled to the protection of the business judgment rule. . . . To show that a demand has been wrongfully refused, and that the directors are not entitled to the protection of the business judgment rule, <u>a plaintiff must allege facts that challenge the board's good faith or the reasonableness of the board's investigation of the plaintiff's demand</u>.

<u>Id.</u> at 865-66 (alterations in original; citations omitted) (emphasis added).

The complaint in this action nowhere alleges, as it must, that a majority of the Funds' directors were interested. <u>See</u> <u>id.</u> at 866. In fact, as reflected in the Funds' SEC filings, a majority of the Funds' directors (7 of 10) are <u>disinterested</u>. (Schwartz Decl. Ex. 4 at 12-16; Moving Br. at 4.) Moreover, the complaint also does not allege, as it must, any facts to show that the directors acted in bad faith or failed to adequately investigate plaintiffs' purported demand. <u>Harhen</u>, 730 N.E.2d at 867. While plaintiffs' opposition papers make reference to the directors' written response to plaintiffs' "demand," that response shows that the Funds' directors acted in good faith and carefully considered the demand. (Korsinsky Decl. Ex. C.) Accordingly, plaintiffs have not satisfied the applicable pre-suit demand requirements and Count II should be dismissed. <u>Cf.</u> <u>Harhen</u>, 730 N.E.2d at 867 (board's brief response to shareholder demand held adequate; "lengthy explanations of a demand refusal are not required"); <u>see</u> <u>also</u> <u>Sterling v. Mulholland</u>, 98 Civ. 3808, 1998 U.S. Dist. LEXIS 19550, at *4-8 (S.D.N.Y. Dec. 14, 1998).

## CONCLUSION

For the reasons stated above and in their moving brief, defendants respectfully request that this Court grant their motion to dismiss in all respects.

Dated: September 29, 2005
      New York, New York

Respectfully submitted,

/s/ Seth M. Schwartz
Seth M. Schwartz (SS 2530)
Beverly A. Farrell (BF 2244)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM, LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
Ronald Baron, Morty Schaja,
Linda S. Martinson, BAMCO
Inc., Baron Capital, Inc., Baron
Growth Fund and Baron Small Cap Fund

*Brooks R. Burdette*
Brooks R. Burdette (BB 8380)
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
(212) 756-2000

Attorneys for Defendants
Steven B. Dodge, Norman S. Edelcup, David I. Fuente, Charles N. Mathewson, Harold W. Milner, Raymond Noveck and David A. Silverman