UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEYER MINTZ and MEIR SPEAR,

               Plaintiffs

    -v-

RONALD BARON, et al.

               Defendants.

```
┌──────────────────────────────┐
│ USDC SDNY                     │
│ DOCUMENT                      │
│ ELECTRONICALLY FILED          │
│ DOC #: _____         │
│ DATE FILED: 09/19/06          │
└──────────────────────────────┘
```

No. 05 Civ. 4904 (LTS)(HBP)

## MEMORANDUM OPINION AND ORDER

APPEARANCES:

ZIMMERMAN, LEVI & KORSINSKY, LLP
  By: Eduard Korsinsky, Esq.
39 Broadway, Suite 1601
New York, NY 10006

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP
  By: Seth M. Schwartz, Esq.
     Beverly A. Farrell, Esq.
Four Times Square
New York, NY 10036
       -and-
SCHULTE ROTH & ZABEL, LLP
  By: Brooks R. Burdette, Esq.
919 Third Avenue
New York, NY 10022

*Attorneys for Plaintiffs*

*Attorneys for Defendants*

LAURA TAYLOR SWAIN, United States District Judge

Plaintiffs Meyer Mintz and Meir Spear (collectively, "Plaintiffs") bring this action on behalf of themselves and other present and former shareholders of the Baron Growth Fund (the "Growth Fund") and the Baron Small Cap Fund (the "Small Cup Fund") (collectively, the "Funds") against the advisor of the Funds, BAMCO, Inc. ("BAMCO" or the "Advisor"), the distributor of the Funds, Baron Capital, Inc. ("Baron Capital" or the "Distributor"), and the individual trustees of the Funds (the "trustees") (collectively, "Defendants"). Plaintiffs assert claims for breach of fiduciary duty under Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a-35(b) ("ICA") and under state law in connection with the alleged overpayment of certain marketing and distribution expenses under Rule 12b-1 promulgated pursuant to the Investment Company Act, 17 C.F.R. § 270.12b-1 ("Rule 12b-1 fees") from September 12, 2003 (for the Growth Fund), and from April 22, 2005 (for the Small Cap Fund), to the time of the filing of the Complaint. Defendants move to dismiss the Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1. The Court has jurisdiction of Plaintiffs' federal claim pursuant to 15 U.S.C. § 80a-35(b)(5) and supplemental jurisdiction of their state law fiduciary duty claim. For the following reasons, the Court grants in part and denies in part Defendants' motion to dismiss the Complaint.

## BACKGROUND

The following facts alleged in the Complaint are taken as true for the purposes of the instant motion to dismiss the Complaint for failure to state a claim. Baron Capital is a registered broker-dealer, the distributor of the Funds and an affiliate of BAMCO. (Compl. ¶ 20.) BAMCO is a subsidiary of Baron Capital and at all relevant times was and continues to be the

investment advisor to the Funds, is responsible for the making investment decisions and, together with the officers, administers the Funds' daily operations. (Id. ¶ 33.) Defendants Ronald Baron, Morty Schaja, and Linda S. Martinson are officers and trustees of the Funds and the remaining individual defendants are trustees of the Funds. (Id. ¶¶ 23-32.) The Growth Fund and Small Cap Fund are part of the same Massachusetts business trust and commenced trading on January 3, 1995, and October 1, 1997, respectively. (Id. ¶¶ 21-22.)

Shareholders have been assessed, on a monthly and pro rata basis, Rule 12b-1 fees of 0.25% of the Funds' average daily assets. (Id. ¶ 34.) These fees have been paid directly to Baron Capital, the Funds' Distributor. (Id. ¶ 39.) These fees relate to the promotion, marketing and distribution of the Funds, and are "primarily intended to result in the sale of shares." (Id. ¶¶ 34, 39.) The relevant statutory section provides that Rule 12b-1 fees may be assessed through implementation of a distribution plan "only if the board of directors who vote to approve such implementation or continuation conclude in the exercise of reasonable business judgment, and in light of their fiduciary duties under state law and section 36(a) and (b) . . . that there is a reasonable likelihood that the plan will benefit the company and its shareholders." (Id. ¶ 37.)

The Complaint alleges that Defendants have breached their fiduciary duties under relevant state and federal law by charging shareholders Rule 12b-1 fees "that lacked any reasonable relationship to the actual services provided to the Funds or actual expenses incurred on behalf of the Funds." (Id. ¶¶ 57, 61.) On September 12, 2003, and April 22, 2005, respectively, the Growth Fund and the Small Cap Fund closed to new investors.[1] (Id. ¶¶ 41,47.)

---

[1]     The Funds have remained open to "investments from financial advisors with existing clients in the [F]und[s], clients of retirement plan providers or 529 plan providers, and employees of the Adviser and their family members." (Compl. ¶

Despite the closing to new investors, both plans have continued to assess Rule 12b-1 fees at a rate of 0.25% and, because the Funds have increased, the total Rule 12b-1 fees have consequently increased. (Id. ¶¶ 43, 47.) Plaintiffs allege that, because the Funds have been closed to new investors, Rule 12b-1 fees charged from these closure dates to the filing of the Complaint should have been substantially reduced or eliminated altogether because there would be less need for marketing and distribution and, accordingly, the fees charged subsequent to the closing of the Funds are unreasonable and excessive. (Id. ¶¶ 42-3, 46-7, 53.) Plaintiffs further allege that, irrespective of the closure of the Funds and based simply on the growth of funds and the corresponding greater Rule 12b-1 fees, these fees are not related to expenses incurred for promotional activities. (Id. ¶¶ 45, 47.)

Plaintiffs also allege that these 12b-1 fees would be substantially reduced if Defendants terminate certain distribution agreements with broker-dealers. (Id. ¶ 48.) The Funds have entered into distribution agreements with Schwab and Fidelity (collectively, the "Fund Supermarkets") to list their shares on electronic distribution platforms. (Id. ¶ 49.) The purpose of these lists is to sell more shares and presumably attract more investors to Funds. (Id.) Plaintiffs contend that, because the Funds have closed to new investors, shareholders have received no benefits from being listed on these platforms and there is "no justification for maintaining these distribution agreements and assessing shareholders for [Rule 12b-1] expenses required thereunder." (Id. ¶ 51.)

Plaintiffs seek to recover the allegedly excessive Rule 12b-1 fees charged to

---

41; Seth M. Schwartz Decl. in Supp. of Def.'s Mot. to Dismiss ("Schwartz Decl.") Exs. 1, 2.) Effective May 1, 2005, the Growth Fund closed to investments by new retirement plans. (See Schwartz Decl., Ex. 1.)

shareholders and to enjoin the Defendants from continuing to overcharge the Funds'

shareholders. (Id. ¶ 53.)


## DISCUSSION

In evaluating a motion to dismiss a complaint pursuant to Rule 12(b)(6), the Court

must take as true the facts alleged in the plaintiff's complaint and draw all reasonable inferences

in his favor. W. Mohegan Tribe & Nation v. Orange County, 395 F.3d 18, 20 (2d Cir. 2004);

Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994).  The court must not dismiss a

complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

On a motion to dismiss, the court may consider any "documents upon which the

complaint relies and which are integral to the complaint," Subaru Distribs. Corp. v. Subaru of

Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005), as well as "public disclosure documents required by

law to be, and that have been, filed with the SEC."  Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir.

2000).  From the allegations contained in the Complaint, the Court finds that the Funds'

Prospectus (with its incorporated supplements) is integral to the Complaint and that Plaintiffs

knew about it and relied on it in bringing the instant action.  Moreover, the Prospectus is a public

document that is required to be and has been filed with the SEC.  See Schwartz Decl., Ex. 3, last

page; In re Merrill Lynch & Co., Inc., Research Reports Secs. Litig., 272 F. Supp. 2d 243, 247

n.2 (S.D.N.Y. 2003) (finding that fund prospectus was properly considered in determination of

motion to dismiss because it was a public document and was filed with SEC).  The Court will

therefore consider the Funds' Prospectus dated January 28, 2005 (see Schwartz Decl., Ex. 3), and

its incorporated supplements dated February 18, 2005 (Id., Ex. 1), and April 8, 2005 (Id., Ex. 2),

in making its determination on the motion to dismiss Count I for failure to state a claim.

Count I

     In Count I of their Complaint, Plaintiffs allege that Defendants have violated Section

36(b) of the Investment Company Act, 15 U.S.C. § 80a-35(b) ("Section 36(b)"), which imposes a

fiduciary duty with respect to the receipt of compensation by investment advisors and their

affiliates:

> the investment advisor of a registered investment company shall
> be deemed to have a fiduciary duty with respect to the receipt of
> compensation for services paid by such registered investment company,
> or by the security holders thereof, to such investment advisor or any
> affiliated person of such investment advisor.

15 U.S.C.A. § 80a-35(b) (West 2006).  A shareholder may bring a private action against an

investment advisor or its affiliate for breach of this fiduciary duty with respect to the receipt of

fees in connection with services rendered to the investment company.  See id.; In re Evergreen

Mut. Funds Fee Litig., 423 F. Supp. 2d 249, 257 (S.D.N.Y. 2006).  This fiduciary duty applies to

any fees charged in connection with Rule 12b-1 or fees "intended to result in the sale of shares

issued by such company, including, but not limited to, advertising, compensation of underwriters,

dealers, and sales personnel."  17 C.F.R. § 270.12b-1(b)(a)(2) (2006); Meyer v. Oppenheimer

Mgmt. Corp., 764 F.2d 76, 83 (2d Cir. 1985) (finding that fiduciary duty under Section 36(b) is

broad in scope and applies to fees charged under Rule 12b-1); In re Evergreen, 423 F. Supp. 2d at

258 (same).

     Defendants assert that Count I should be dismissed as against BAMCO, which is

not alleged to have received any of the challenged fees, and that Count I should also be dismissed as against Baron Capital for failure to state a claim. Count I will be dismissed as against BAMCO. Although Section 36(b) imposes fiduciary duties on both advisors and their affiliates with respect to compensation received for services rendered, it specifically provides that a civil action for damages in connection with such fees may only be brought against the recipient of the compensation. See 15 U.S.C.A. § 80a-35(b)(3). Here, there is no allegation that BAMCO received any 12b-1 fees and Count I will, accordingly, be dismissed as against BAMCO. For the following reasons, Defendants' application for an order dismissing Count I as against Baron Capital is, however, denied.

An investment advisor or its affiliate violates the duty imposed by Section 36(b) if the fee charged is "so disproportionately large that it bears no reasonable relationship to the services rendered." In re Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d at 258 (citing Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 928 (2d Cir. 1982)). In determining whether fees are disproportionate to services, courts examine six factors, including the quality of the service provided to the fund's shareholders, the profitability of the fund compared to that of the adviser, any fall-out benefits, the relative economies of scale, comparative fee structures, and the independence of the trustees. Id. (citing Gartenberg, 694 F.2d at 929-30). However, a plaintiff is not required to allege facts supporting each of these factors in its complaint. In re Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d at 258. Under the liberal pleading standard established by Federal Rule of Civil Procedure 8(a), a plaintiff need only "cite some facts in support of the [Section 36(b)] claim that the fees at issue were so disproportionately large that they bore no relationship to the services rendered." Id. at 259; Eaton

Vance Mut. Funds Fee Litig., 380 F. Supp. 2d 222, 237 (S.D.N.Y. 2005) (applying Rule 8 to claims under Section 36(b) and finding that a plaintiff needs to allege facts that would support the claim that the fees were disproportionate to the services rendered).  It is not sufficient, however, merely to allege in conclusory fashion that the charged fees were excessive.  See In re Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d at 258.

Defendants, pointing out that the Complaint's allegations of disproportionality focus principally on the notion that the Funds should not have incurred increased, and arguably should not have incurred any, marketing-related expenses after they were closed to most new investments, contend that, because the Funds' prospectus demonstrates that they are open to additional investments by certain categories of investors and that the relevant 12b-1 plan permits the payment of administrative, as well as marketing expenses, Count I should be dismissed for failure to state a claim.  The Court finds that Plaintiffs' allegations are sufficient, albeit barely so, to plead facts demonstrating that the Rule 12b-1 fees were disproportionate to the services rendered.  Plaintiffs allege, inter alia, that the post-Fund closing absolute increase in the dollar amount of fees charged "had absolutely no correlation to any increase in promotion, marketing, distribution or administrative expenses incurred" but rather was the result of asset appreciation (Compl. ¶ 12); that there was in the relevant period "no scenario . . . wherein shareholders would enjoy any benefit in return for the 12b-1 marketing and distribution fees they are being compelled to pay" (id. ¶ 38); that there was no "reasonable basis wherein shareholders could receive any benefit from the payment of [marketing and distribution-related 12b-1] expenses" (id. ¶ 40); that "[t]he 12b-1 fees charged to investors in fiscal 2004 had absolutely no relationship to any actual expenses incurred for promotion of shares of the Growth Fund but rather, was the result of

appreciation of the Growth Fund's assets" (<u>id.</u> ¶ 45); that "distribution expenses being paid to the Fund Supermarkets through Baron Capital after the Funds closed have no reasonable relationship to the services provided" (<u>id.</u> ¶ 52); and that Defendants charged the Funds 12b-1 fees "for promotion, distribution and other expenses that lacked any reasonable relationship to the actual services provided to the Funds or actual expenses incurred on behalf of the Funds." (<u>Id.</u> ¶ 57.) <u>See</u> <u>Pfeiffer v. Bjurman, Barry & Assocs.</u>, No. 03 Civ. 9741(DLC), 2004 WL 1903075, at *1 (S.D.N.Y. Aug. 24, 2004) (denying defendant's motion to dismiss action for excessive fees under Rule 12b-1 because plaintiffs had satisfied pleading standard by alleging that fees lacked any relationship to actual expenses for promotion and distribution and were the result of the appreciation of the assets of the fund.)  Accordingly, Defendants' motion to dismiss Count I as against Baron Capital is denied.

Plaintiffs have, however, plead their Section 36(b) claim as a direct shareholder claim rather than one by shareholders on behalf of the affected Funds, as contemplated by the statute. <u>See</u> 15 U.S.C.A. § 80-35(b) (West 2006) ("An action may be brought under this subsection by . . . a security holder of such registered investment company on behalf of such company . . . .").  Plaintiffs must amend their Complaint in this respect, or show cause in writing as to why such amendment is not necessary, within the time period allotted below for amendment of their claim asserted in Count II.

<u>Count II</u>

Defendants contend that Count II should be dismissed pursuant to Federal Rule of Civil Procedure 23.1 because the cause of action is derivative in nature and Plaintiffs have failed

to allege that they have satisfied the relevant state demand requirement.  Defendants further argue that Count II fails to set forth a cognizable state law claim insofar as it is premised on the notion that an alleged breach of Rule 12b-1 is actionable under state law.

Here, Massachusetts law governs the derivative action issue because the Funds are alleged to be organized as parts of business trusts under the laws of that state.[2]  "Under Massachusetts law, to determine whether a claim should be brought through a derivative suit, a court must determine whether the plaintiff has alleged an injury distinct from that suffered by shareholders generally . . . ." In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp. 2d 222, 233 (S.D.N.Y. 2005) (internal quotation marks omitted); Green v. Nuveen Advisory Corp., 186 F.R.D. 486, 489 (N.D. Ill. 1999) ("To determine whether a claim belongs to the corporation, a court [applying Massachusetts law] must inquire whether the shareholder's injury is distinct from the injury suffered generally by the shareholders as owners of the corporate stock.").  If the alleged injury only affects the plaintiffs as owners of the corporate stock, the injury is considered indirect and must be brought as a derivative action.  See Jackson v. Stuhlfire, 547 N.E.2d 1146, 1148 (Mass. App. Ct. 1990). A claim of breach of fiduciary duty resulting in a diminution of a plaintiff's share of stock is an indirect harm that must be brought as a derivative action.  Farragut Mortgage Co. v. Arthur Anderson LLP, No. 95 Civ. 6231, 1999 WL 823656, at *17 (Mass. Super. Ct. Aug. 5, 1999).

Under Massachusetts law, all derivative actions must satisfy the state's universal

---

[2]     See Compl. ¶¶ 21-2.  Both parties agree that Massachusetts law should apply. Actions involving derivative suits against business trusts are required to follow Massachusetts demand rules.  See ING Principal Prot. Funds Derivative Litig., 369 F. Supp. 2d at 171.

demand statute.  See Mass. Gen. Laws ch. 156D. § 7.42 (West 2006).  In relative part, the statute

reads, "[n]o shareholder may commence a derivative proceeding until . . . a written demand has

been made upon the corporation to take suitable action."  Id.; ING Principal Prot. Funds

Derivative Litig., 369 F. Supp. 2d 163, 170 (D. Mass. 2005) (noting that there are no exceptions

to the written demand requirement under section 7.42).  If an entity refuses a plaintiff's demand

to take action, a plaintiff must allege why the demand was wrongfully refused.  Harhen v. Brown,

730 N.E. 2d 859, 865 (Mass. 2000).  This includes alleging facts that challenge the corporation's

good faith or reasonableness in refusing a plaintiff's demand.  Id.  Pursuant to Federal Rule of

Civil Procedure 23.1, courts review the allegations of a derivative complaint to determine the

relevant state requirements have been satisfied.  See RCM Secs. Fund, Inc. v. Stanton, 928 F.2d

1318, 1329 (2d Cir. 1991) (finding that Rule 23.1 is not the source of a demand requirement but

is only a procedural requirement empowering federal courts to determine from the pleadings

whether the demand requirement has been met).  Rule 23.1 requires a plaintiff to plead "with

particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from

the directors or comparable authority . . . and the reasons for the plaintiff's failure to obtain the

action."  Fed. R. Civ. P. 23.1 (2006).

        In this case, Plaintiffs, in Count II, allege a direct injury to the shareholders in

connection with excessive 12b-1 fees.  However, under Massachusetts law, this cause of action is

derivative in nature.  The Complaint fails to allege any violation of the rights of the individual

shareholders.  The gravamen of Plaintiffs' claim is that Defendants injured the Funds by charging

excessive Rule 12b-1 fees.  Plaintiffs allege that Defendants charged excessive fees which have

resulted in reduction of the net asset value of the Funds and consequently a pro rata deduction of

each share owned by a shareholder.[3]  The alleged harm to the shareholders thus occurred only indirectly as a result of on the alleged injury to the Funds.  See In re Goldman Sachs Mut. Funds, No. 04 civ. 2567(NRB), 2006 WL 126772, at *6 (S.D.N.Y. Jan. 17, 2006) (applying similar Delaware provision as to derivative actions, finding that "pro rata bearing of expenses by individual shareholders [in connection with excessive advisory and Rule 12b-1 fees], seems to fall within the very essence of an injury which is not independent from that suffered by the corporation").  Accordingly, the cause of action under Count II, alleging breach of fiduciary duty under state law, must be brought as a derivative action.  See In re Eaton Vance, 380 F. Supp. 2d at 234 (applying Massachusetts law, finding that claim of breach of fiduciary duty under state law in connection with excessive 12b-1 fees is derivative in nature); In re Evergreen, 423 F. Supp. 2d at 261 (applying similar Delaware provision as to derivative actions, finding that claim of breach of fiduciary duty under state law in connection with excessive 12b-1 fees is derivative action).

Because the claim asserted in Count II is derivative in nature, Plaintiffs are required to comply with Massachusetts' universal demand statute.  While Plaintiffs assert in their responsive papers that they have satisfied this requirement,[4] the allegations in the Complaint do

---

[3]     Plaintiffs argue that the shareholders pay the Rule 12b-1 fees directly.  (Pl.'s Mem. in Opp'n. to Mot. to Dismiss, 16-7.)  However, this contention is contradicted by the Prospectus, which expressly states that, "[t]he Funds have adopted a plan under rule 12b-1 that allows the Funds to pay distribution fees [and] [b]ecause the fees are paid out of the Funds' assets on an on-going basis, over time these fees will increase the cost of your investment." (Schwartz Decl. Ex. 3 at 19.)

[4]     Plaintiffs contend that they made a demand and that it was refused.  (Pl.'s Mem. in Opp'n. to Mot. to Dismiss, 21-5.)  They cite to a letter dated January 19, 2005, that was sent to Defendants and a letter dated May 12, 2005, sent by Defendants' to support their argument.  (See Eduard Korsinsky Decl. in Supp. of Opp'n to Mot. to Dismiss, Exs. A, C.)  However, these letters are not plead in or annexed to

not indicate compliance with the procedural requirements of Rule 23.1.  The Complaint fails to

allege with particularly the efforts Plaintiffs made to obtain action by Defendants and the reasons

for Defendants' refusal of the demand.  Accordingly, the Court dismisses Count II for failure to

satisfy the Requirements of Rule 23.1.  However, because Plaintiffs have requested leave to

amend and no such prior amendments have been made, Plaintiffs may file and serve an amended

complaint that alleges sufficient facts to satisfy the procedural requirements of Rule 23.1.

Dismissal of Count II, without leave to replead, is also warranted to the extent

Count II is premised on the alleged violation of Rule 12b-1 as a violation of a duty under

Massachusetts state law.  This Circuit has found that a claim for excessive fees and appropriate

damages premised on an alleged violation of Rule 12b-1 is indistinguishable from one brought

under Section 36(b) and that it is improper to bring such a claim if it is cognizable as a claim

under Section 36(b).  See Krinsk v. Fund Asset Mgmt., Inc., 875 F.2d 404, 412-13 (2d Cir.

1989).  Here, Plaintiffs already allege a violation of Section 36(b) in Count I.


<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the Complaint is

granted, with prejudice, insofar as Count I is asserted as against BAMCO and insofar as Count II

is premised on Section 12b-1 of the ICA.  The motion is granted, with leave to replead as a

derivative action, as to the state common law claim asserted in Count II.  Plaintiffs shall also

amend their Complaint to replead Count I as a claim on behalf of the Funds, or show cause in

---

the Complaint and thus are not properly before the Court on the instant motion to
dismiss.

writing as to why such amendment is not necessary, by the amendment deadline set forth in the following paragraph.

Any Complaint amendments relating to the foregoing matters shall be served and filed by **October 6, 2006.** In the absence of the timely service and filing of such amendments (or demonstration as to why Count I need not be replead), the Complaint will be dismissed in its entirety, with prejudice and without further advance notice.

SO ORDERED.

Dated: New York, New York
September 1̂, 2006

_____
LAURA TAYLOR SWAIN
United States District Judge

Copies mailed _9/19/06 to counsel + MT_
Chambers of Judge Swain