UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x

MEYER MINTZ and MEIR SPEAR,    :
   :
             Plaintiffs,    :    No. 05 CV 4904 (LTS)(HBP)
   :
      -against-    :
   :    <u>ORAL ARGUMENT REQUESTED</u>
RONALD BARON, MORTY SCHAJA,    :
LINDA S. MARTINSON, STEVEN B.    :    **ECF Case**
DODGE, NORMAN S. EDELCUP, DAVID    :
I. FUENTE, CHARLES N. MATHEWSON,    :
HAROLD W. MILNER, RAYMOND    :
NOVECK, DAVID A. SILVERMAN,    :
BARON CAPITAL, INC.,    :
   :
             Defendants,    :
   :
BARON GROWTH FUND and BARON    :
SMALL CAP FUND,    :
   :
         Nominal Defendants.    :
------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## <u>THEIR MOTION TO DISMISS THE AMENDED COMPLAINT</u>

SKADDEN, ARPS, SLATE,           SCHULTE ROTH & ZABEL LLP
  MEAGHER & FLOM, LLP         Brooks R. Burdette (BB 8380)
Seth M. Schwartz (SS 2530)         919 Third Avenue
Beverly A. Farrell (BF 2244)         New York, NY 10022
Four Times Square              (212) 756-2000
New York, New York 10036
(212) 735-3000

Attorneys for Defendants           Attorneys for Defendants
Ronald Baron, Morty Schaja,        Steven B. Dodge, Norman S. Edelcup,
 Linda S. Martinson, BAMCO Inc.,    David I. Fuente, Charles N. Mathewson,
 Baron Capital, Inc., Baron Growth    Harold W. Milner, Raymond Noveck and
 Fund and Baron Small Cap Fund     David A. Silverman

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 3

A.   The Parties ........................................................................................................ 3

B.   Rule 12b-1 Fees ................................................................................................ 4

C.   The Partial Closure of the Funds ....................................................................... 4

D.   The Complaint ................................................................................................... 5

ARGUMENT ................................................................................................................ 6

I.   COUNT ONE FAILS TO STATE A CLAIM UNDER SECTION 36(b)
     OF THE ICA .................................................................................................... 6

     A.   Applicable Standards ................................................................................ 6

     B.   Plaintiffs' Allegations Do Not State a Claim Under Section 36(b) ............ 7

          1.   The Amended Complaint Does Not Adequately Allege
               Receipt of Fees by Baron Capital ...................................................... 7

          2.   The Amended Complaint Fails to Adequately Allege that
               the Fees Were Excessive .................................................................... 8

          3.   At a Minimum, Plaintiffs Have No Claim Relating to Any
               Fees Paid After January 14, 2005 ...................................................... 14

II.  COUNT TWO OF THE COMPLAINT SHOULD BE DISMISSED .............................. 15

     A.   Plaintiff's State Law Claim Previously Was Dismissed With
          Prejudice .................................................................................................. 15

     B.   Plaintiffs Have Not Satisfied the Demand Requirement ........................... 16

          1.   There Has Been No Demand ............................................................... 16

          2.   The Amended Complaint Nowhere  Alleges, As it Must,
               That the "Demand" Was Wrongfully Refused .................................... 18

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

In re Alliance Bernsteen Mut. Fund Excessive Fee Litigation, 04 Civ. 4885
2006 U.S. Dist. LEXIS 939 (S.D.N.Y. Jan. 11, 2006)................................15

Amron v. Morgan Stanley Investment Advisors Inc., No. 04-3938, 2006 U.S.
App. LEXIS 24264 (2d Cir. Sept. 26, 2006) ................................................7, 8, 11, 12

Breven v. Federated Equity Management Co. of Pa., 233 F.R.D. 429 (W.D. Pa.
2005) ..................................................................................................................15

Clairdale Enterprises, Inc. v. C.I. Realty Investors, 423 F. Supp. 257 (S.D.N.Y.
1976) ..................................................................................................................17

Cortec Industrial, Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991) ..........................2

Daily Income Fund, Inc. v. Fox, 464 U.S. 523 (1984) ......................................................15

In re Evergreen Mutual Funds Fee Litigation, 423 F. Supp. 2d 249 (S.D.N.Y.
2006) ..................................................................................................................7, 10

First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763 (2d Cir. 1994).....................11

Gartenberg v. Merrill Lynch Asset Management, 694 F.2d 923 (2d Cir. 1982) ................7

Gatz v. Ponsoldt, Civ. A. No. 174-N, 2004 Del. Ch. LEXIS 203 (Del. Ch.
Nov. 5, 2004) ....................................................................................................17

Green v. Nuveen Advisory Corp., 295 F.3d 738 (7th Cir. 2002) .......................................15

Greenspan v. Lindley, 36 N.Y.2d 473, 330 N.E.2d 79, 369 N.Y.S.2d 123 (1975) ...........17

Harhen v. Brown, 730 N.E.2d 859 (Mass. 2000) .......................................................17, 19

ING Principal Protection Funds, 369 F. Supp. 2d at 170 .................................................17

In re JP Morgan Chase Sec. Litigation, 363 F. Supp. 2d 595 (S.D.N.Y. 2005) .................2

Krinsk v. Fund Asset Mgmnt., Inc., 715 F. Supp. 472 (S.D.N.Y. 1988), aff'd,
875 F.2d 404 (2d Cir. 1989).............................................................................14, 15

Levner v. Saud, 903 F. Supp. 452 (S.D.N.Y. 1994) .........................................................18

Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397 (S.D.N.Y. 2002) ................................2

<u>Migdal v. Rowe Price-Fleming International, Inc.</u>, 248 F.3d 321 (4th Cir. 2001) ..............7

<u>Parfi Holding AB v. Mirror Image Internet, Inc.</u>, 794 A.2d 1211 (Del. Ch. 2001),
    <u>rev'd on other grounds</u>, 817 A.2d 149 (Del. 2002) ......................................................18

<u>In re Salomon Smith Barney Mutual Fund Fees Litigation</u>, 441 F. Supp. 2d 579
    (S.D.N.Y. 2006) ...............................................................................................7, 8

<u>Sterling v. Mulholland</u>, 98 Civ. 3808, 1998 U.S. Dist. LEXIS 19550 (S.D.N.Y.
    Dec. 14, 1998).................................................................................................19

<u>Yameen v. Eaton Vance Distributing, Inc.</u>, 394 F. Supp. 2d 350 (D. Mass. 2005).....11, 12

## STATUTES

15 U.S.C. § 80a-35(b) ...........................................................................6, 7, 15, 18

Fed. R. Civ. P. 23.1 .....................................................................................17

Mass. Gen. Laws Ann. ch. 156D § 7.42 (West Supp. 2005) ...............................................16

Defendants[1] respectfully submit this memorandum of law in support of their motion for an order, pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure, dismissing the First Amended Complaint (the "Amended Complaint") for failure to state a claim for relief and failure to comply with the requirements of Rule 23.1.

## INTRODUCTION

Plaintiffs are purported shareholders of two mutual funds, Baron Growth Fund and Baron Small Cap Fund (the "Funds"), respectively. In their Amended Complaint, plaintiffs challenge the payment of "12b-1 fees" following partial "closure" of the Funds to new investors. According to plaintiffs, these payments violated Section 36(b) of the Investment Company Act of 1940 (the "ICA") and Massachusetts law.

The claims alleged in the Amended Complaint are substantially similar to those previously asserted by plaintiffs in their original complaint, which this Court dismissed in part pursuant to a Memorandum Opinion and Order dated September 18, 2006 (the "Opinion").[2] As shown below, the Amended Complaint fails to cure the defects of the predecessor pleading, and it should be dismissed in its entirety.

The Amended Complaint is based principally on the conclusory and demonstrably erroneous allegation that the Funds were completely closed to new investors. Relying entirely on this false premise, plaintiffs infer and therefore allege that (i) the Funds were not marketed to

---

[1]   The named defendants are Ronald Baron, Morty Schaja, Linda S. Martinson, Steven B. Dodge, Norman S. Edelcup, David I. Fuente, Charles N. Mathewson, Harold W. Milner, Raymond Noveck, David A. Silverman (collectively, the "Individual Defendants"), Baron Capital, Inc. ("Baron Capital"), Baron Growth Fund and Baron Small Cap Fund.

[2]   On September 28, 2006, Baron Capital filed a motion for reconsideration of the Opinion to the extent it sustained the sufficiency of plaintiffs' Section 36(b) claim. The motion for reconsideration is pending before the Court, and defendants respectfully request that it be consolidated for resolution with this motion to dismiss.

new or existing investors; (ii) they incurred no marketing expenses; and (iii) there was no increase in the costs associated with providing services to the Funds' shareholders.

All of the foregoing allegations are contradicted by the same SEC filings upon which plaintiffs have relied in drafting their Amended Complaint.[3] Those documents show that the Funds remained open and were marketed to several categories of investors, who purchased a substantial number of Fund shares throughout the period in question. Indeed, during this period, as the public filings show, broker-dealers unaffiliated with Baron Capital sold approximately 60 million new shares in the aggregate, net of redemptions, adding more than $2.3 billion of new capital to the Funds' coffers.

The Funds compensated the broker-dealers who sold these additional shares in part through payment of 12b-1 fees. Those fees were calculated as 0.25% of the net shareholder assets brought to the Funds by the broker-dealers. This amount covered both the marketing services described above, and the personal account services that the broker-dealers continued to provide to new and existing shareholders so long as they remained invested in the Funds. Under the circumstances, there is no factual basis for plaintiffs' conclusory assertions that the Funds' 12b-1 fees bore no reasonable relation to the value of the marketing and other services actually provided to the Funds and their shareholders when the Funds supposedly were "closed." For these and other reasons set forth below, the Amended Complaint fails to state any claim under Section 36(b) of the ICA.

---

[3]     In ruling on a motion to dismiss, this Court properly may consider the Funds' SEC filings because plaintiffs have relied on them in framing the complaint, see Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991), and because they are "'required by law to be, and . . . [have] been filed with the SEC.'" In re JP Morgan Chase Sec. Litig., 363 F. Supp. 2d 595, 615 (S.D.N.Y. 2005) (citation omitted). Moreover, where, as here, "a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss." Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).

The Amended Complaint also fails to state any claim under the law of Massachusetts. In the Opinion, this Court dismissed plaintiffs' state law claim with prejudice to the extent it merely repeated in substance the allegations of the 36(b) claim. Since the gravamen of Count II of the Amended Complaint is that defendants purportedly violated Massachusetts law by authorizing "excessive fees" in violation of Section 36(b), the claim should once again be dismissed with prejudice. In the alternative, the state law claim, which is derivative in nature, should be dismissed on the ground that plaintiffs have failed to satisfy the pre-suit demand requirements of Massachusetts law and Rule 23.1 of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

### A.   The Parties

Plaintiffs Meyer Mintz and Meir Spear are alleged shareholders of Baron Growth Fund and Baron Small Cap Fund, respectively. (Amnd. Compl. ¶¶ 20, 21.) The shares of each Fund constitute a series issued by Baron Investment Funds Trust, a no-load, open ended diversified management investment company organized as a business trust under Massachusetts law on February 19, 1987. (Amnd. Compl. ¶¶ 24-25.)

Defendant Baron Capital is a registered broker-dealer and the distributor of the shares issued by the Funds. (Amnd. Compl. ¶ 23.) Defendants Ronald Baron, Morty Schaja, Linda S. Martinson, Steven B. Dodge, Norman S. Edelcup, David I. Fuente, Charles N. Mathewson, Harold W. Milner, Raymond Noveck, and David A. Silverman are or were Trustees of the Funds. (Amnd. Compl. ¶¶ 26-35.) With the exception of Ronald Baron, Morty Schaja and Linda Martinson, who are present or former officers of the Funds, all of the Individual

3

Defendants are or were independent trustees unaffiliated with the Funds and Baron Capital.  (Ex. 5 at 35-38.)[4]

**B.      Rule 12b-1 Fees**

Pursuant to NASD Conduct Rule 2830, a mutual fund may pay both an "asset-based sales charge" for marketing services and a "service fee" for "personal service and/or the maintenance of shareholder accounts."  NASD Conduct Rule 2830(b)(9).  The asset-based sales charge may not exceed 0.75% per annum of the average annual net assets of the mutual fund plus interest, and the service fee may not exceed 0.25% of average annual net assets.  NASD Conduct Rule 2830(d)(2)(E) (i), (d)(5).  Here, the Funds' 12b-1 plan authorizes the Funds to pay an asset-based fee equal to 0.25% of average net assets, which amount is used to cover <u>both</u> the marketing charges <u>and</u> service fees of third party service providers.  (Amnd. Compl. ¶ 38)

**C.      The Partial Closure of the Funds**

During the relevant period, the prospectuses issued by the Funds disclosed that the Funds would be closed in part to some investors, but would <u>remain open</u> to the following persons, each of whom remained free to continue purchasing Fund shares through broker-dealers and other financial intermediaries:

- existing Fund shareholders.

- financial advisors with existing clients in the Funds.

- clients of retirement plan providers or 529 plan providers.

- employees of the Funds' investment adviser and their family members.

(Exs. 1-2; Ex. 3 at 1, 20-21; Amnd. Compl. ¶ 43.)  Thus, even after they "closed," the Funds continued to market and sell additional shares not only to existing shareholders, but also to

---

[4]      All "Ex. __" references are to the accompanying Declaration of Seth M. Schwartz.

potential new investors who were clients of financial advisors and plan providers that had other clients already invested in the Funds.

**D.     The Complaint**

Count I of the Amended Complaint alleges that defendant Baron Capital violated Section 36(b) of the ICA.  (Amnd. Compl. ¶¶ 79-84)  Count II alleges that the Individual Defendants purportedly breached fiduciary duties owed to plaintiffs and other Fund shareholders under state law.  (Id. ¶¶ 86-88.)  Plaintiffs purport to bring both counts derivatively on behalf of the Funds.  (Id. ¶ 1.)

As with the original complaint, the gravamen of the Amended Complaint is that defendants are liable to the Funds because "[a]lthough the Growth Fund and Small Cap Fund have been closed to new investors from September 12, 2003 and April 22, 2005, respectively, through August 10, 2006 (hereinafter the 'Closed Period'), the Funds continued to pay 12b-1 fees related to marketing and distribution when they were closed at the very same rate as when they were open to investors with no apparent justification."  (Amnd. Compl. ¶ 4.)  The Amended Complaint also repeats the original complaint's assertion that the 12b-1 fees paid after "closure" had "absolutely no correlation to any increase in promotion, marketing, distribution or other services provided to the Fund[s]."  (Amd. Compl. ¶¶ 14, 16.)

In a variation on the same theme, the Amended Complaint adds a few new allegations in an attempt to further explain why, in plaintiffs' view, the Funds' 12b-1 fees were "excessive."  For example, plaintiffs allege that when the Funds were partially closed to certain categories of new investors, the Funds paid "12b-1 fees purportedly for marketing and distribution related expenses when no such marketing or distribution activities took place."  (Amnd. Compl. ¶ 48; see also id. ¶¶ 49-52)  According to Plaintiffs, the Funds "received virtually nothing in return [for the 12b-1 fees] other than shareholder servicing, a commodity

5

service that can be obtained for a fraction" of what the Funds paid.  (Id. ¶ 48)  As to shareholder

servicing, plaintiffs further allege that "the servicing costs did not increase because the [Funds]

did not market or distribute to new investors during the Closed Period." (Id. ¶ 52)

The Amended Complaint also attacks the Funds' 12b-1 fees on the ground that

they are asset-based, i.e., they are calculated as 0.25% of the Funds' net assets.  Although the

NASD has expressly approved asset-based 12b-1 fees of up to 0.75% of net assets, NASD

Conduct Rule 2830(d)(2)(E)(i), (d)(5), plaintiffs claim that such fees are per se violations of

Section 36(b).  As alleged by plaintiffs in the Amended Complaint:

> As of March 31, 2006, of the $5,693,061,194 of net assets in the
> Growth Fund, $1,883,592,542 of these assets were due solely to
> market appreciation.  The appreciation of the Growth Fund's asset
> base was not due to any increase in marketing or distribution
> activities and because these assets do not create additional
> shareholders and require servicing, no additional cost is incurred to
> service the existing shareholder base.  Thus, Growth Fund
> shareholders have been paying 0.25% of approximately $1.8
> billion in appreciated assets of the Growth Fund even though no
> additional marketing, distribution or shareholder servicing costs
> were expended in relation to those shares.

Id. ¶ 54.

## ARGUMENT

## I.   COUNT ONE FAILS TO STATE A CLAIM UNDER SECTION 36(b) OF THE ICA

### A.   Applicable Standards

Section 36(b) of the ICA provides in pertinent part that:

> the investment adviser of a registered investment company shall be
> deemed to have a fiduciary duty with respect to the receipt of
> compensation for services, or of payments of a material nature,
> paid by such registered investment company, or by the security
> holders thereof, to such investment company or any affiliated
> person of such investment adviser.

15 U.S.C. § 80a-35(b).

6

To state a claim under this statute, plaintiffs must plead facts sufficient to show that the Funds paid 12b-1 fees to Baron Capital which were "'so disproportionately large that [they] bear[] no reasonable relationship to the services rendered [by Baron Capital to the Funds] and could not have been the product of arm's-length bargaining.'" Amron v. Morgan Stanley Inv. Advisors Inc., No. 04-3938, 2006 U.S. App. LEXIS 24264, at *13 (2d Cir. Sept. 26, 2006), quoting Gartenberg v. Merrill Lynch Asset Mgmt, 694 F.2d 923, 928 (2d Cir. 1982).

To adequately state a claim under Section 36(b), a complaint "may not simply allege in a conclusory manner that advisory fees are 'excessive.'" Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 327 (4th Cir. 2001); In re Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d 249, 258 (S.D.N.Y. 2006). Rather, plaintiffs must allege "those facts necessary to a finding of liability." Amron, at *12 (emphasis in original). Specifically, plaintiffs must "set forth those facts necessary to a finding that the fees were excessive." Id. at *14. As shown below, plaintiffs' Amended Complaint fails to satisfy these pleading requirements.

### B. Plaintiffs' Allegations Do Not State a Claim Under Section 36(b)

1.  The Amended Complaint Does Not Adequately Allege Receipt of Fees by Baron Capital

By the terms of the statute, "Section 36(b) liability is expressly limited to receipt of compensation by investment advisers or affiliated persons of such investment advisers." In re Salomon Smith Barney Mut. Fund Fees Litig., 441 F. Supp. 2d 579, 601 (S.D.N.Y. 2006). Consequently, as a threshold matter, plaintiffs' Section 36(b) claim is legally defective because the Amended Complaint "does not clearly allege that the compensation complained of was received by an investment adviser or any affiliated person of such investment adviser," 15 U.S.C. §§80a-35(b), as required by the ICA." Id. at *53. Accord Evergreen, 423 F. Supp. 2d at 259; In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp. 222, 238 (S.D.N.Y. 2005). See also Opinion

7

at 7 (dismissing 36(b) claim as against BAMCO where there was "no allegation that BAMCO received any 12b-1 fees")

   While Baron Capital is an affiliate of the Funds' investment adviser, the Amended Complaint does not specifically allege that Baron Capital received any of the 12b-1 fees challenged as excessive by plaintiffs in this case.  To be sure, plaintiffs have alleged that "[a]ccording to the Funds' SEC filings," certain unspecified "distribution related expenses are paid directly to the Funds' Distributor (Baron Capital) . . . ."  (Amnd. Compl. ¶ 42)  But as to the 12b-1 fees challenged by plaintiffs, the Amended Complaint alleges that the Funds paid them to "broker-dealers . . . who receive at least 0.25% of net assets held by customers of the respective broker-dealer."  (Id. ¶¶ 64, 68; emphasis added)  The Amended Complaint does not allege, however, the amount of any 12b-1 fees paid to Baron Capital, nor does it allege whether Baron Capital provided any marketing or shareholder services to the Funds, much less facts to show that any 12b-1 fees paid to Baron Capital bore no reasonable relation to any services it provided.  Because the Amended Complaint does not adequately allege that Baron Capital received any of the 12b-1 fees at issue, and because it does not allege that broker-dealers who did receive the fees are affiliates of the Funds' adviser, plaintiffs' Section 36(b) claim is legally insufficient and should be dismissed.  Salomon Smith Barney, 441 F. Supp. 2d at 601.

   2.  The Amended Complaint Fails to
      Adequately Allege that the Fees Were Excessive

   Even if plaintiffs had adequately alleged receipt of fees by Baron Capital, which they did not, the Amended Complaint still would suffer from another separate pleading defect: plaintiffs fail to adequately allege, as they must, the "facts necessary to a finding that the fees were excessive."  Amron, 2006 U.S. App. LEXIS 24264, at *14.

       (a)      The Amron Decision

In <u>Amron</u>, plaintiffs alleged in conclusory terms that certain investment advisory fees and Rule 12b-1 fees were excessive in violation of ICA§ 36(b). As for the 12b-1 fees, plaintiffs asserted that they "confer[r]ed no benefit on the Fund," which the court took "to mean that the services thus procured were of no value." <u>Id</u>. at *4.

The Second Circuit held that this conclusory allegation was legally insufficient. As explained by the court: "[f]or obvious reasons, in establishing that fees are disproportionate to the services provided it is essential to allege the total amount of fees, which Plaintiffs fail to do." <u>Id</u>. at *15. In the same vein, the court also found the allegations deficient in another respect: while plaintiffs' complaints generally criticized the size of defendants' 12b-1 fees, they made "no allegations regarding the costs of performing fund transactions or the relationship between such costs and the number of transactions performed." <u>Id</u>. at 16.

In light of these and other deficiencies, the court held that "Plaintiffs' assertions [were] inadequate to survive a motion to dismiss," and declined "'to permit [this] plaintiff with a largely groundless claim simply to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence.'" <u>Id</u>. at 20-21 (citation omitted).

       (b)      Plaintiffs' Allegations In this Case
                    <u>Are Defective Under Amron</u>

          (i)     <u>Marketing Services</u>

The Section 36(b) claims in this case are premised in large part on the allegation that during the Closed Period, when the Funds were partially closed to certain categories of new investors, the 12b-1 fees paid by the Funds "had absolutely no correlation to any increase in

promotion, marketing, distribution or other services provided to the Fund[s]." (Amnd Complt. ¶ 14; see also id. ¶¶ 16, 51, 59, 61). This allegation, in turn, is premised on the assertion that during the Closed Period, "the Funds admittedly were not soliciting new investors." (Id. ¶ 13; see also id. ¶¶ 46, 48, 50, 52, 54, 68, 70)

        The SEC filings upon which plaintiffs have relied in framing these allegations show that both the allegations and the inferences plaintiffs purport to draw from them are without basis in fact. The prospectuses filed by the Funds disclosed that during the Closed Period, the Funds were only partially closed and thus continued to solicit the purchase of Fund shares from both existing shareholders and prospective investors. (Exs. 1-2; Ex. 3 at 1, 20-21) Moreover, the Funds' public filings show that in the period between October 1, 2003 and March 31, 2006, the Growth Fund sold an additional 45,805,851 shares to new and existing investors (Ex. 5 at 24, Ex. 6 at 18, Ex. 8), and the Small Cap Fund sold an additional 14,348,710 shares between April 1, 2005 and March 31, 2006. (Ex. 6 at 18, Ex. 7 at 16, Ex. 9) These new shares and shareholders did not materialize by osmosis. They were solicited by broker-dealers and other financial intermediaries on behalf of the Funds in return for the payment of 12b-1 fees. Cf. Evergreen, 423 F.Supp.2d at 255 ("the truth of factual allegations that are contradicted by documents properly considered on a motion to dismiss need not be accepted.")

        The Amended Complaint ignores the true, indisputable facts, and tries to manufacture a Section 36(b) claim based on the self-serving fiction of "complete closure." But having erroneously asserted that no marketing or distribution services were provided to the Funds during the Closed Period, the Amended Complaint nowhere alleges, as it must, the amount of the fees paid for the marketing services that were in fact provided, much less pleads facts sufficient to show that the amounts paid bore no reasonable relation to the value of those

services.  Plaintiffs therefore state no claim under Section 36(b) of the ICA.  <u>Amron</u>, 2006 U.S.
App. LEXIS 24264 at *13-14.

(ii)    <u>Shareholder Services</u>

Plaintiffs also fail in their attempt to state a Section 36(b) claim based on their
mischaracterization of the ongoing costs of servicing the accounts of Fund shareholders, <u>i.e.</u>, the
conclusory allegation that the Funds' "servicing costs did not increase because the [Funds] did
not market or distribute to new investors during the Closed Period."  (Amnd Complt. ¶ 52)  On a
motion to dismiss, "'unwarranted deductions of fact are not admitted.'"  <u>First Nationwide Bank v.
Gelt Funding Corp.</u>, 27 F.3d 763, 771 (2d Cir. 1994) (citations omitted).  Given the "absence of a
factual basis" for plaintiffs' assertion that the Funds stopped marketing to new investors, the
unwarranted deduction they have drawn from that faulty premise – <u>i.e.</u>, servicing costs did not
increase – is insufficient to state a claim under Section 36(b).  See <u>id.</u>; <u>see also Yameen v. Eaton
Vance Distrib., Inc.</u>, 394 F. Supp.2d 350, 355 n.5 (D. Mass. 2005) (dismissing 36(b) claim in
part because plaintiff failed to provide "facts to support her allegation that the closing of the fund
resulted in a decrease of … [ongoing] personal services").

As shown above, during the Closed Period, the Funds collectively issued
approximately <u>60 million</u> additional shares to new and existing investors, net of redemptions.
Thus, the level of shareholder services, <u>i.e.</u>, the aggregate number and cost of the transactions
involved in providing those services, necessarily increased.[5]  In any event, the Amended
Complaint nowhere identifies the amounts spent by the Funds just on shareholder services,

---

[5]    Such services include, among other things, responding to and acting on shareholders'
inquiries concerning fund performance, dividends, shareholder account balances,
exchange privileges, and redemption rights.  <u>See</u> Ex. 4 at 3 Part D.

11

erroneously assuming that <u>all</u> of the 0.25% 12b-1 fee was earmarked for servicing shareholders when, in fact, a portion of the fee also compensated broker-dealers for their marketing efforts.

Having mischaracterized the extent to which the 12b-1 fees covered shareholder services, the Amended Complaint necessarily fails to allege facts sufficient to show that the value of the shareholder services actually provided was not reasonably related to the amounts actually paid by the Funds just for those services.  In that connection, the Amended Complaint fails to include, as it must, "allegations regarding the costs of performing fund transactions or the relationship between such costs and the number of transactions performed." <u>Amron</u>, 2006 U.S. App. LEXIS 24264 at *16.  Rather, the Amended Complaint merely alleges or implicitly assumes, without factual basis, that (a) the Funds' shareholder base and the number of shareholder service transactions purportedly remained constant during the Closed Period; and (b) the shareholder services provided to the Funds purportedly could have been obtained from "third-party vendors at a fraction of the cost." (Amnd. Complt. ¶ 66)  These conclusory allegations, which neither identify the amounts paid by the Funds nor the amounts "third parties" would have charged under similar circumstances, are too conclusory to state a claim under Section 36(b).  <u>See</u> <u>Yameen</u>, 394 F. Supp. 2d at 355 n.5 (rejecting as insufficient the conclusory allegation that a 0.25% service fee was "excessive because in a closed fund, those expenses are <u>de minimus</u>").

(iii)   <u>The increase in Fund assets</u>

Plaintiffs fare no better with their attack on asset-based 12b-1 fees, which posits that the portion of the fee attributable to appreciation of Fund assets purportedly bears no relation to marketing or shareholder services provided to the Funds.  This theory is meritless as a matter of law for a number of reasons.

12

As a threshold matter, this allegation is based on a demonstrably erroneous premise, namely, that during the Closed Period, there was no increase in the number of shares issued by the Funds or the number of shareholders who held them. As shown above, the Funds' public filings confirm that more than 60 million new shares were issued by the Funds to new and existing investors during the Closed Period. Consequently, there is no factual basis for the Amended Complaint's conclusory assertion that marketing activities had nothing to do with the appreciation of Fund assets.

During the Closed Period, the Funds' assets increased in large part through the successful marketing efforts of the broker-dealers who convinced new and existing investors to purchase additional Fund shares. Indeed, in the period October 1, 2003 through March 31, 2006, broker-dealers sold an additional 45,805,851 shares of the Growth Fund, net of redemptions, which increased the Fund's net assets in the amount of $1,934,573,734.[6] During the same period, the Growth Fund's assets appreciated by an additional $1,795,989,293. (Ex. 5 at 24, Ex. 6 at 18, Ex. 8)[7] This appreciation necessarily stemmed from, among other things, the Fund's successful investment of the more than $1.9 billion of additional shareholder capital contributed to the Fund.

In the same vein, during the period April 1, 2005 through March 31, 2006, broker-dealers sold an additional 14,348,710 shares of the Small Cap Fund, net of redemptions, which increased the Fund's net assets by $336,233,976. During the same period, the Fund's assets appreciated by an additional $541,707,378 (Ex. 6 at 18; Ex. 7 at 16, Ex. 9). As with the Growth Fund, this appreciation necessarily reflected, in part, the Small Cap Fund's successful investment

---

[6]     This 88% increase in net assets during the Closed Period shows that there absolutely is no merit to the Amended Complaint's bald assertion that "there exists no rational basis for increasing (by 80%) the Rule 12b-1 fees charged to shareholders after the Growth Fund closed. . . . (Amnd. Complt. ¶ 14; emphasis in original).

[7]     Cf. Amended Complaint ¶ 54 (alleging appreciation of $1,883,592,542).

13

of more than $330 million of additional shareholder capital.  Thus, contrary to the conclusory

allegations of the Amended Complaint, the marketing expenses incurred by the Funds during the

Closed Period incontrovertibly attracted additional shareholder capital which, in turn, contributed

in part to the Funds' phenomenal returns on investment.

   In this connection, it merits emphasis that mutual funds are authorized to pay 12b-

1 fees to support marketing efforts aimed at increasing total assets under management.  Krinsk v.

Fund Asset Mgmnt., Inc., 715 F. Supp. 472, 501 (S.D.N.Y. 1988), aff'd, 875 F.2d 404 (2d Cir.

1989) This salutary objective benefits fund shareholders by positively impacting fund

performance.  As explained by then district Judge Walker:

> . . . [A]n inflow of assets to a fund has a positive effect on
> investment performance regardless of the fund's absolute size.  In
> other words, while "bigger" may not be better per se, "getting
> bigger" is better.  Conversely, when a fund is losing assets due to
> increased redemptions, the fund is more difficult to manage.

Krinsk, 715 F. Supp. at 500.  See also Ex. 4 at 3 Part D (12b-1 fees "may provide incentives for

continued broker promotion of the fund to minimize shareholder redemptions").

   In this case, the same SEC filings upon which plaintiffs rely show that the Funds'

payment of less than $31 million of 12b-1 fees produced net asset inflows of more than $2.3

billion in the aggregate during the Closed Period.  Under the circumstances, as a matter of law,

these fees were reasonably related to the marketing services provided by broker-dealers for the

purpose of increasing Fund assets.

   3.  At a Minimum, Plaintiffs Have
     No Claim Relating to Any Fees
     Paid After January 14, 2005

   Even if plaintiffs had otherwise pled a legally sufficient 36(b) claim, which they

have not, at the very least, they are barred from seeking any relief based on fees paid after

January 14, 2005, the date on which they commenced this action.

Section 36(b) provides in pertinent part that "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted." 15 U.S.C. § 80a-35(b)(3). Consequently, as a matter of law, "recovery is limited to actual damages for a period of one year prior to suit." Daily Income Fund, Inc. v. Fox 464 U.S. 523, 526 n.2 (1984). Accord e.g., Green v. Nuveen Advisory Corp., 295 F.3d 738, 743 (7th Cir. 2002) (under Section 36(b), "damages are recoverable only for the one-year period before the filing of the action"); In re Alliance Bernsteen Mut. Fund Excessive Fee Litig., 04 Civ. 4885 (SWK), 2006 U.S. Dist. LEXIS 939, at *7 n.3 (S.D.N.Y. Jan. 11, 2006) ("Congress sharply limited recovery under Section 36(b) to a one-year time period"); Breven v. Federated Equity Mgmt. Co. of Pa., 233 F.R.D. 429, 433 (W.D. Pa. 2005) (under Section 36(b), "damages are recoverable only for one year prior to the commencement of the action").

Plaintiffs commenced this action on January 14, 2005. Consequently, at a minimum, all allegations of the Amended Complaint addressed to 12b-1 fees paid after that date or before January 14, 2004 fail to state a claim for relief under Section 36(b).

## II.   COUNT TWO OF THE COMPLAINT SHOULD BE DISMISSED

### A.   Plaintiff's State Law Claim Previously Was Dismissed With Prejudice

In the Opinion, this Court dismissed Count II of the original complaint without leave to replead to the extent it was:

> premised on the alleged violation of Rule 12b-1 as a violation of a duty under Massachusetts state law. This Circuit has found that a claim for excessive fees and appropriate damages premised on an alleged violation of Rule 12b-1 is indistinguishable from one brought under Section 36(b) and that it is improper to bring such a claim if it is cognizable as a claim under Section 36(b). See Krinsk v. Fund Asset Mgmt., Inc., 875 F.2d 404, 412-13 (2d Cir. 1989). Here, Plaintiffs already allege a violation of Section 36(b) in Count I.

Opinion op. at 13.

Like Count II of the original complaint, Count II of the Amended Complaint is nothing more than a reiteration of the 36(b) claim alleged in Count I of the same pleading. Indeed, plaintiffs' state law claim is premised on the following allegation:

> The Defendant Trustees have breached the aforementioned fiduciary duty under state common law by causing the Funds to be overcharged for marketing, distribution and shareholder servicing expenses during the Closed Period.

Amnd. Compl. ¶ 87  In substance, these allegations are virtually identical to plaintiffs' Section 36(b) claim, which is premised on the assertion that:

> Baron Capital breached its duty of loyalty to the Funds by charging the Funds Rule 12b-1 fees for promotion, distribution and other expenses that lacked any reasonable relationship to the actual services provided to the funds or actual expenses incurred on behalf of the Funds.

Id. ¶ 81; see also id. ¶¶ 53, 55, 62 (alleging "violation of state common law and Section 36(b) that required fees charged to be reasonably related to the services rendered").  Because Count II of the Amended Complaint is premised entirely on an alleged violation of Rule 12b-1 and Section 36(b), it should be dismissed with prejudice.

### B.   **Plaintiffs Have Not Satisfied the Demand Requirement**

#### 1.   There Has Been No Demand

Count II is a common law shareholder derivative claim and therefore is subject to the requirements of Massachusetts' universal demand statute.  See Mass. Gen. Laws Ann. ch. 156D § 7.42 (West Supp. 2005).  Pursuant to that statute, before commencing this action, plaintiffs were required to make a written demand on the Funds' Trustees requesting that they bring a lawsuit in the name of the Funds to redress the purported wrongs alleged in the complaint. As recently explained by one court in language fully applicable here:

16

> Section 7.42 provides, in relevant part, "No shareholder may
> commence a derivative proceeding until: (1) a written demand has
> been made upon the corporation to take suitable action." There are
> no exceptions.

ING Principal Protection Funds, 369 F. Supp. 2d at 170 (emphasis added).[8]  Moreover, pursuant

to Rule 23.1 of the Federal Rules of Civil Procedure, in any complaint filed in a derivative action,

the shareholder plaintiff must "allege with particularity the efforts, if any, made by the plaintiff

to obtain the action the plaintiff desires from the directors or comparable authority . . . , and the

reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ. P.

23.1.

      In their Amended Complaint, plaintiffs claim that a letter from their counsel dated

January 19, 2005 (the "Letter") satisfied the demand requirements of Massachusetts law.  (Ex.

10.)  While the Letter does contain a "demand" of sorts, it is inadequate as a matter of law for

purposes of making the requisite "demand on the corporation's board of directors to prosecute the

litigation." Harhen v. Brown, 730 N.E.2d 859, 865 (Mass. 2000).

      To constitute a proper demand, "a communication must specifically state: (i) the

identity of the alleged wrongdoers, (ii) the wrongdoing they allegedly perpetrated and the

resultant injury to the corporation, and (iii) the legal action the shareholder wants the board to

take on the corporation's behalf." Gatz v. Ponsoldt, Civ. A. No. 174-N, 2004 Del. Ch. LEXIS

203, at *17 (Del. Ch. Nov. 5, 2004).  Purported demands that are ambiguous are "'construed

---

[8]     In this context, courts applying Massachusetts law in derivative suits against business
trusts have uniformly required shareholders to follow the Massachusetts pre-suit demand
rules.  See, e.g., ING Principal Protection Funds, 369 F. Supp. 2d at 170-72; Clairdale
Enters., Inc. v. C.I. Realty Investors, 423 F. Supp. 257, 260-61 (S.D.N.Y. 1976);
Greenspan v. Lindley, 36 N.Y.2d 473, 478-79, 330 N.E.2d 79, 81, 369 N.Y.S.2d 123,
126-27 (1975).

against a finding of a demand.'" Id. at *18 (citation omitted); accord Levner v. Saud, 903 F.

Supp. 452, 456 (S.D.N.Y. 1994).

       Here, among its numerous other flaws, the Letter failed to satisfy the

fundamental requirement of specifically demanding that the Funds' directors commence a legal

proceeding against specifically named individuals or entities. Rather, it merely demanded that

the directors terminate the Funds' 12b-1 Plan and "settle" the "claims" threatened in the draft

complaint accompanying the Letter. As for the draft complaint, it alleged only one claim: a

section 36(b) claim against BAMCO (the investment adviser), Baron Capital and Baron Growth

Fund. Because the only persons with standing to bring a section 36(b) claim are the SEC and

Fund shareholders, see 15 U.S.C. § 80a-35(b), neither the Letter nor the complaint attached to it

could reasonably be viewed as a demand on the Funds' directors to commence litigation against

any purported wrongdoer. Consequently, as a matter of law, the Letter did not constitute an

adequate demand on the Funds' directors. See e.g. Levner, 903 F. Supp. at 456 (purported

demand held inadequate where, as here, it did not specify the remedial relief the directors were to

seek against the alleged wrongdoer); Parfi Holding AB v. Mirror Image Internet, Inc., 794 A.2d

1211, 1237 (Del. Ch. 2001) (purported demand held inadequate where, as here, it made no

demand that the board cause the corporation to file suit against the company or any director, and

the communication indicated that plaintiff might bring a direct claim), rev'd on other grounds,

817 A.2d 149 (Del. 2002).

      2.    The Amended Complaint Nowhere
            Alleges, As it Must, That the
            "Demand" Was Wrongfully Refused

       Even if the Letter constituted a proper "demand," which it did not, plaintiffs' state

law claims still would be legally defective. As a matter of settled Massachusetts law, "[s]hould a

board of directors, the majority of whom are disinterested, refuse [a] demand to pursue litigation,

a plaintiff may pursue the lawsuit only by showing that the demand was wrongfully refused."

Harhen, 730 N.E.2d at 865.  As explained by the court in Harhen:

> In a demand refused case, because it is presumed that a disinterested board of directors acts "in good faith towards all [the corporation's] members," and because directors "as a matter of business policy[] may refuse to bring a suit," a disinterested board of directors that has refused a plaintiff's pre-suit demand is entitled to the protection of the business judgment rule. . . . To show that a demand has been wrongfully refused, and that the directors are not entitled to the protection of the business judgment rule, <u>a plaintiff must allege facts that challenge the board's good faith or the reasonableness of the board's investigation of the plaintiff's demand</u>.

Id. at 865-66 (alterations in original; citations omitted) (emphasis added).

The Amended Complaint in this action nowhere alleges, as it must, that a majority of the Funds' directors were interested.  See id. at 866.  In fact, as reflected in the Funds' SEC filings, a majority of the Funds' directors (7 of 10) are disinterested.  (Ex. 12 at 35-38)  Moreover, the Amended Complaint also does not allege, as it must, any facts to show that the directors acted in bad faith or failed to adequately investigate plaintiffs' purported demand.  Harhen, 730 N.E.2d at 867.  While the Amended Complaint refers to the directors' written response to plaintiffs' "demand" (Amnd Complt. ¶ 75), that response shows that the Funds' directors acted in good faith and carefully considered the demand.  (Ex. 11.)  Accordingly, plaintiffs have not satisfied the applicable pre-suit demand requirements and Count II should be dismissed.  Cf. Harhen, 730 N.E.2d at 867 (board's brief response to shareholder demand held adequate; "lengthy explanations of a demand refusal are not required"); see also Sterling v. Mulholland, 98 Civ. 3808, 1998 U.S. Dist. LEXIS 19550, at *4-8 (S.D.N.Y. Dec. 14, 1998).

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss should be granted in all respects.

Dated: October 20, 2006
       New York, New York

Respectfully submitted,


  /s/ Seth M. Schwartz                          Brooks R. Burdette /smo w/permission
Seth M. Schwartz (SS 2530)                      Brooks R. Burdette (BB 8380)
Beverly A. Farrell (BF 2244)                    SCHULTE ROTH & ZABEL LLP
SKADDEN, ARPS, SLATE,                           919 Third Avenue
  MEAGHER & FLOM, LLP                           New York, NY 10022
Four Times Square                               (212) 756-2000
New York, New York 10036
(212) 735-3000


Attorneys for Defendants                        Attorneys for Defendants
Ronald Baron, Morty Schaja,                     Steven B. Dodge, Norman S. Edelcup,
 Linda S. Martinson, Baron Capital, Inc.,       David I. Fuente, Charles N. Mathewson,
Baron Growth Fund and Baron Small Cap           Harold W. Milner, Raymond Noveck and
Fund                                            David A. Silverman

20