UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEYER MINTZ and MEIR SPEAR,  :

                    Plaintiffs,  :     No. 05 CV 4904 (LTS)

      -against-  :

RONALD BARON, MORTY SCHAJA,  :
LINDA S. MARTINSON, STEVEN B.
DODGE, NORMAN S. EDELCUP, DA-  :
VID I. FUENTE, CHARLES N.
MATHEWSON, HAROLD W. MILNER,  :
RAYMOND NOVECK, DAVID A.
SILVERMAN, BAMCO, INC., BARON  :
CAPITAL, INC., BARON GROWTH
FUND and BARON SMALL CAP FUND,  :

                  Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION
TO DISMISS THE AMENDED COMPLAINT**

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM, LLP
Seth M. Schwartz (SS 2530)
Beverly A. Farrell (BF 2244)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
Ronald Baron, Morty Schaja,
Linda S. Martinson, BAMCO Inc.,
Baron Capital, Inc., Baron Growth
Fund and Baron Small Cap Fund

SCHULTE ROTH & ZABEL LLP
Brooks R. Burdette (BB 8380)
919 Third Avenue
New York, NY 10022
(212) 756-2000

Attorneys for Defendants
Steven B. Dodge, Norman S. Edelcup, David
I. Fuente, Charles N. Mathewson, Harold W.
Milner, Raymond Noveck and David A.
Silverman

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Amended Complaint.[1]

## ARGUMENT

### I.   COUNT I OF THE COMPLAINT SHOULD BE DISMISSED

#### A.   The Amended Complaint Does Not Adequately Allege that 12b-1 Fees Were Excessive

In their opposition brief, plaintiffs paraphrase their Amended Complaint, arguing that the alleged "facts" are "more than enough" to state a claim under Section 36(b) of the ICA. (Opp'n Br. 6-8)  But plaintiffs have not disputed -- and cannot dispute -- that the alleged "facts" are all contradicted by the Funds' SEC filings, the same documents plaintiffs relied on to frame their amended pleading.  These documents plainly show that in exchange for a 25 basis point 12b-1 fee, independent broker-dealers provided marketing and shareholder services which resulted in, among other things, the sale of approximately 60 million new Fund Shares net of redemptions during the Closed Period. (Opening Br. 9-14)  This sale of shares to new and existing Fund investors brought the Funds more than $2.3 billion of new capital.  (Id.)  Moreover, this massive cash inflow had a positive impact on the Funds' performance during the Closed Period, facilitating the Funds' ability to further diversify their respective investment portfolios, thereby producing additional returns of more than $2.3 billion in the same period.  (Id.)

On a motion to dismiss, the Court should not "'accept allegations that are contradicted or undermined by . . . written materials properly before the Court.'"  Otor, S.A. v. Credit Lyonnais, S.A., No. 04 CV 6978 (RO), 2006 U.S. Dist. LEXIS 64885, at *9 (S.D.N.Y. Sept. 11, 2006)(citation

---

[1]   Capitalized terms not defined herein are defined as set forth in the Opening Memorandum of Law filed by defendants in support of this motion on October 20, 2006 ("Opening Br.").

omitted).  Where, as here, "a plaintiff's allegations are contradicted by such . . . document[s], those allegations are insufficient to defeat a motion to dismiss." Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2000).  Because the SEC filings on which plaintiffs rely indisputably show that the 12b-1 fees at issue were reasonably related to the marketing and shareholder services provided to the Funds during the Closed Period, plaintiffs' Amended Complaint fails to state a claim under Section 36(b) of the ICA.

**B.      The Amended Complaint Does
         Not Adequately Allege Receipt
         of Fees by Baron Capital**

Contrary to plaintiffs' contention (Opp'n Br. 9), defendants have not conceded that Baron Capital "received" 12b-1 fees within the meaning of Section 36(b).  Rather, in defendants' prior motion to dismiss, defendants acknowledged that the original complaint included an allegation that Baron Capital had received them.  (See id.)  In contrast, in the Amended Complaint, plaintiffs specifically allege that most, if not all, of the 12b-1 fees at issue were paid by the Funds to independent broker-dealers unaffiliated with any Baron entity.  (Am. Comp. ¶¶ 64, 67, 68)  These specific allegations of payments to third-party broker-dealers control over plaintiffs' generalized assertion that the Funds' 12b-1 plan "authorizes the Funds" to pay 12b-1 fees to Baron Capital. (Opp'n Br. 9); see also Otor, 2006 U.S. Dist. LEXIS 64885, at *9 (a court should not "accept allegations that are contradicted by or undermined by other more specific allegations in the complaint").  Plaintiffs' specific admission that the fees were paid to the third party brokers who actually sold Fund shares and serviced shareholder accounts shows that plaintiffs cannot adequately allege, as they must, that Baron Capital ultimately received and retained any of the 12b-1 fees that

plaintiffs are challenging under Section 36(b) of the ICA.  Count I of the Amended Complaint therefore should be dismissed.

### C.   Plaintiffs Have No Claim Relating to Any Fees Paid After May 23, 2005[2]

In their opening brief, defendants established that Section 36(b) limits damages to those incurred one year prior to commencement of the lawsuit.  (Opening Br. 14-15)  In response, plaintiffs contend that the language of Section 36(b) permits recovery of damages allegedly incurred after the action is commenced.  (Opp'n Br. 11-12)  Plaintiffs are wrong as a matter of law, as established by the numerous decisions cited by defendants on this point in their opening brief -- none of which is mentioned, much less distinguished, by plaintiffs in their opposition brief. (See Opening Br. 15)

Section 36(b) permits a security holder to recover excess fees "paid by [the] investment company" (past tense), and specifies that such recovery is unavailable for any period "prior to one year before the action was instituted." 15 U.S.C. § 80a-35(b)(3) (emphasis added).  If Congress had intended to permit recovery of fees "paid or to be paid" by an investment company, Section 36(b) would have so stated, as other sections of the same statute make clear.  For example, Section 36(a) of the ICA creates a cause of action against a defendant who "has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct." Id. § 80a-35(a) (emphasis added).  The

---

[2]   As plaintiffs correctly note in their opposition brief, they commenced this action on May 23, 2005.  (Opp'n Br. 12 n.1)

3

absence of comparable language in Section 36(b) further underscores Congressional intent to strictly limit recovery under that section solely to "excessive" fees, if any, paid within one year prior to suit.

In their opposition brief, plaintiffs rely on Hunt v. Invesco Funds Group, No. H-04-02555, 2006 WL 1751900 (S.D. Tex. June 22, 2006), (Opp'n Br. 12), but that case is readily distinguishable. Indeed, as the Invesco court explained, its discussion of damages was pure dicta because it "specifically decline[d]" to rule on "the appropriate damages period" under Section 36(b). Hunt, 2006 WL 1751900, at *1 n.2. In contrast, numerous other courts have expressly found that under Section 36(b), "recovery is limited to actual damages for a period of one year prior to suit." Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 526 n.2 (1984); see also Opening Br. 15.

## II.    COUNT II OF THE COMPLAINT SHOULD BE DISMISSED

### A.    The State Law Claim
#### Should Be Dismissed Again With Prejudice

Plaintiffs contend that Count II is premised on alleged violations of state law, not Rule 12b-1, because the Amended Complaint alleges that the defendant Trustees purportedly owe fiduciary duties to the Funds under state law. (Opp'n Br. 12-13) But the gravamen of Count II – in both the original complaint and the Amended Complaint – is that the Trustees purportedly breached their duties by "causing the Funds to be overcharged for marketing, distribution and shareholder servicing expenses during the Closed Period." (Am. Compl. ¶ 87; see also Compl. ¶ 63 ("Defendants have breached the aforementioned fiduciary duty by causing the Funds' shareholders to be overcharged for marketing and distribution related expenses after the Funds closed to new investors.")). Consequently, plaintiffs' state law claim remains "a reincarnation of [their] 'excessive fee' argument, and thus is indistinguishable from the Section 36(b) claim." Krinsk v. Fund Asset

Mgmt., Inc., 875 F.2d 404, 413 (2d Cir. 1989). It is for this reason that this Court dismissed Count II of the original complaint with prejudice, (Op. 13), and Count II of the Amended Complaint should be dismissed with prejudice again for the same reason.

**B.     Plaintiffs Have Not Satisfied**
**       the Universal Demand Requirement**

Even if the state law claim were not barred by Krinsk, which it is, it still would be defective for failure to satisfy the pre-suit demand requirements applicable to this derivative claim.

1.     There has Been No Demand

It is settled law in Massachusetts that the

> rationale behind the demand requirement is that as a basic principle of corporate governance, the board of directors or majority of shareholders should set the corporation's business policy, including the decision whether to pursue a lawsuit.

Harhen v. Brown, 730 N.E.2d 859, 865 (Mass. 2000) (emphasis added); accord ING Principal Prot. Funds Derivative Litig., 369 F. Supp. 2d 163, 171 (D. Mass. 2005) (the "primary purpose of the universal demand statute is to protect the authority of the board of directors to decide whether to pursue a lawsuit on behalf of the corporation" (emphasis added)). Consequently, to satisfy the demand requirement, putative shareholder plaintiffs must, at a minimum, make a pre-suit "demand on the corporation's board of directors to prosecute the litigation." Harhen, 730 N.E.2d at 865 (emphasis added).

Here, it is undisputed that plaintiffs never demanded that the Trustees commence any lawsuit. Rather, plaintiff Mintz threatened that he -- Mintz -- would sue Baron Capital and Baron Growth Fund under ICA § 36(b) unless the Trustees paid him to go away. (Ex. 10) This ultimatum

was <u>not</u> a demand on the Trustees to cause the Funds to pursue a lawsuit against any alleged wrongdoer. (<u>See</u> Opening Br. 18). Rather, it was a threat by plaintiff Mintz to bring a Section 36(b) claim, a claim that only he had standing to pursue. <u>See</u> 15 U.S.C. § 80a-35(b). Accordingly, plaintiffs failed to make the type of pre-suit demand required to be made under Massachusetts law, warranting dismissal of Count II of the Amended Complaint.

> 2.    The Amended Complaint Nowhere
>        Alleges, As it Must, that the
>        <u>Demand Was Wrongfully Refused</u>

As trustees of investment companies organized under Massachusetts law, the individual defendants in this case are deemed to be "disinterested" and "independent" for demand purposes if they are "disinterested" within the meaning of the ICA. <u>See</u> Mass. Gen. Laws ch. 182, § 2B. As set forth in the applicable Massachusetts statute:

> A trustee of a trust who with respect to the trust is not an interested person, as defined in said Investment Company Act of 1940, should be deemed to be independent and disinterested <u>when making any determination or taking any action</u> as a trustee.

<u>Id.</u> (emphasis added).

The ICA provides in relevant part that a trustee is disinterested unless

> the trustee is an "affiliated person" – that is, if the trustee is "controlled by" the investment adviser, 15 U.S.C. § 80a-2(a)(3), (19). The ICA defines "control" as "the power to exercise a controlling influence over the management or policies of a company, unless such power is solely the result of an official position with such company" and provides that "[a] natural person shall be presumed <u>not</u> to be a controlled person within the meaning of this subchapter." <u>See</u> 15 U.S.C. § 80a-2(a)(9).

6

In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp. 2d 222, 239 (S.D.N.Y. 2005) (emphasis added)(alteration in original); accord In re BlackRock Mut. Funds Fee Litig., No. 04 Civ. 164, 2006 U.S. Dist. LEXIS 13846, at *39-40 (W.D. Pa. Mar. 29, 2006); see also In re AllianceBernstein Mut. Fund Excessive Fee Litig., No. 04 Civ. 4885, 2006 U.S. Dist. LEXIS 939, at *10-11 (S.D.N.Y. Jan. 11, 2006) (to overcome presumption of director independence under the ICA, plaintiffs must "unambiguously demonstrate director domination by an investment advisor").

The Funds' pertinent SEC filings, submitted as exhibits to the Funds' moving papers, show that a majority of the Funds' Trustees (7 out of 10) are not employed by, and thus not affiliated with, the Funds' investment adviser, BAMCO, Inc. (Ex. 12 at 35-38). This establishes that a majority of the Trustees are presumptively disinterested under both the ICA and Massachusetts law.

In contrast, the Amended Complaint does not even attempt to rebut the presumption of disinterest. Rather, it refers to the disinterested trustees by name, but makes no allegation whatsoever which suggests, much less shows, that any of the disinterested directors should be deemed interested in this case. (See Am. Compl. ¶¶ 29-35)

In their opposition brief, plaintiffs claim for the first time that two Trustees are "interested" because each is a director of Dick's Sporting Goods and American Tower, respectively, and the Funds have purchased shares of common stock issued by those corporations. (Opp'n Br. 15-16) But even if plaintiffs properly could utilize their opposition brief to amend their Amended Complaint, which they cannot, see Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998), this newly minted contention fails to establish "interest" as a matter of law. Harhen, 730 N.E.2d at 866.

In Harhen, plaintiff alleged that MacAllister Booth, a director of John Hancock Mutual Life Insurance Company ("Hancock"), was an "interested" director because he also served as chief executive officer of Polaroid, and Hancock had purchased $18 million of Polaroid's long-term bonds. Id. The Massachusetts Supreme Court rejected this contention, reasoning:

> The purchase of the bonds . . . constituted only a small fraction of Hancock's $107 billion portfolio, and plaintiff's complaint does not set out the extent of Polaroid's assets or total indebtedness. Nor does the plaintiff's complaint allege that Booth, or Polaroid for that matter, had a material pecuniary interest in the transaction or indeed would benefit in any respect from a decision regarding the plaintiff's demand. Therefore . . . the plaintiff has failed to allege sufficient facts that . . . the board as a whole . . . [was] interested.

Id. (citation omitted).

Here, the Funds' investments in Dick's Sporting Goods and American Tower are a small fraction of the Funds' total assets under management, which exceed $9.4 billion in the aggregate in the case of Baron Growth Fund, Baron Small Cap Fund, Baron iOpportunity Fund and Baron Fifth Avenue Growth Fund. (Compare Opp'n Br. 15-16 with Ex. 6 at 16) Moreover, plaintiffs nowhere allege that any unaffiliated Trustee has any pecuniary interest in the Funds' payment of 12b-1 fees, nor do they attempt to explain how the Funds' investments in Dick's Sporting Goods or American Tower could have enabled BAMCO to force any such Trustee to approve 12b-1 fees. Thus, plaintiffs have failed to establish, as they must, that a majority of the Trustees is "interested" within the meaning of the ICA and Massachusetts law.

Where, as here, a majority of the Trustees is disinterested, the question becomes whether the majority also acted in good faith and conducted a reasonable investigation of plaintiffs'

"demand."  Here, the Trustees' good faith and reasonable investigation is demonstrated by the Trustee's written response to plaintiffs' "demand," which acknowledged receipt of the demand and explained why the Trustees determined to reject it.  (Ex. 11); cf. Harhen, 730 N.E.2d at 867 ("The [Board's] refusal letter, while brief, was adequate.  It referenced to the plaintiff's demands and stated that those demands had been 'carefully reviewed.'").  Because plaintiffs have alleged no facts to rebut this showing, their derivative claim in Count II of the Amended Complaint should be dismissed.  Id. at 868.

## CONCLUSION

For the reasons stated above and in their moving brief, defendants respectfully request that this Court grant their motion to dismiss in all respects.

Dated: December 15, 2006
       New York, New York

Respectfully submitted,

  /s/ Seth M. Schwartz
Seth M. Schwartz (SS 2530)
Beverly A. Farrell (BF 2244)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM, LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Brooks R. Burdette/sms
Brooks R. Burdette (BB 8380)
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
(212) 756-2000

Attorneys for Defendants
Ronald Baron, Morty Schaja,
Linda S. Martinson, BAMCO
Inc., Baron Capital, Inc., Baron
Growth Fund and Baron Small Cap Fund

Attorneys for Defendants
Steven B. Dodge, Norman S. Edelcup, David
I. Fuente, Charles N. Mathewson, Harold W.
Milner, Raymond Noveck and David A.
Silverman

9